UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTOFFER THOMPSON,

    Plaintiff,

v.

G's PIZZERIA & DELI OF BAY CITY,
LLC and SCOTT GALEA, an individual,

    Defendants.

Case No: 1:24-cv-11901

Hon. David M. Lawson

---

| | |
|---|---|
| CANTRELL SCHUETTE<br>Ashwin R. Trehan (P85278)<br>Attorney For Plaintiff<br>401 E. Jackson St., Suite 2340<br>Tampa, FL 33602<br>Direct: (813) 519-0791<br>Firm: (813) 705-6275<br>atrehan@caklegal.com | JACKSON LEWIS P.C.<br>Allan S. Rubin (P44420)<br>John S. Gilliam (P81421)<br>Attorneys for Defendants<br>2000 Town Center, Suite 1650<br>Southfield, Michigan 48075<br>(248) 936-1900<br>allan.rubin@jacksonlewis.com<br>john.gilliam@jacksonlewis.com |

---

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is entered into by and between G's Pizzeria & Deli of Bay City, LLC (referred to throughout this Agreement as "Defendant") and Kristoffer Thompson ("Plaintiff"). The term "Party" or "Parties" as used herein shall refer to Defendant, Plaintiff, or both, as may be appropriate.

    **1.**     **Recitals.**

This Agreement is made with reference to the following facts:

    (a)     Plaintiff was formerly employed by Defendant;

    (b)     Plaintiff's last day of employment with Defendant was on or about June 4, 2024 ("Separation Date");

    (c)     On or about July 23, 2024, Plaintiff brought an action against Defendant in the United States District Court for the Eastern District of Michigan, Case No. 1:24-cv-11901. That complaint was later amended. In the Lawsuit, Plaintiff asserts claims for violations of the Fair Labor Standards Act alleging the failure to pay overtime and for retaliation;

(d) Defendant denies both liability and damages. As such, the Parties agree that there is substantial disagreement between the parties as to both liability and damages; and

(e) There has been no determination on the merits of the Lawsuit but in order to avoid additional cost and the uncertainty of litigation, Plaintiff and Defendant have agreed, subject to the provisions in Paragraph 5 below, to resolve any and all wage and hour claims, known and unknown, asserted and unasserted, which Plaintiff has or may have against Defendant and/or Defendant's direct and indirect past, present, and future parent corporation, affiliates, subsidiaries, partners, divisions, predecessors, insurers, reinsurers, professional employment organizations, representatives, successors, and assigns, and their current and former employees, attorneys, officers, owners, members, managers, directors, and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities (collectively referred to throughout the remainder of this Agreement as "Releasees") as of the date of execution of this Agreement.

2. **Consideration/Indemnification for Tax Consequences and Liens.**

(a) In consideration for Plaintiff signing this Agreement, and complying with its terms and subject to the revocation language below, if any, Defendant agrees to pay the total gross sum of **TWENTY THOUSAND DOLLARS AND ZERO CENTS** ($20,000.00) (the "Settlement Payment"), to be paid as follows:

(1) One payment for alleged lost back pay and/or front pay and wages by check made payable to "Kristoffer Thompson" in the amount of Two Thousand Six Hundred Fifty-Five Dollars $2,655.00), less applicable payroll/tax withholdings, for which Defendant shall issue an IRS Form W-2 to Plaintiff;

(2) One payment for alleged emotional distress, liquidated and/or other non-wage damages by check made payable to "Kristoffer Thompson" in the amount of Seven Thousand Nine Hundred Sixty Nine Dollars and Fourteen Cents ($7,969.14), for which Defendant shall issue an IRS Form 1099-MISC to Plaintiff;

(3) One payment for alleged attorneys' fees and costs by check made payable to "Cantrell Schuette, P.A." ("Plaintiff's Counsel") in the amount of Nine Thousand Three Hundred Seventy-Nine Dollars and Eighty-Six Cents ($9,375.86) for which an IRS Form 1099-MISC shall be issued to each of Plaintiff and Plaintiff's Counsel;

(b) Plaintiff agrees that Plaintiff is responsible for all applicable taxes, if any, as a result of the receipt of these monies in Paragraph 2(a)(2). Plaintiff understands and agrees Defendant is providing Plaintiff with no representations regarding tax obligations or consequences that may arise from this Agreement. Plaintiff, for Plaintiff and Plaintiff's dependents, successors, assigns, heirs, executors, and administrators (and Plaintiff's legal representatives of every kind), agrees to indemnify and hold the Releasees harmless for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Releasees in connection with such governmental authority's determination that Defendant or any of the other Releasees was required to, but failed to, withhold or report the correct amount of income or employment taxes from the payments made to Plaintiff or Plaintiff's Counsel pursuant to Paragraph 2(a) of this Agreement. Plaintiff agrees that Plaintiff shall indemnify the Releasees for the full amount of such liability within thirty (30) days after

*Execution Copy*

receipt of notice from Defendant or any of the other Releasees of the assessment of such taxes, penalties, or interest.

(c) Plaintiff affirms that, in the event any attorneys or third parties have asserted or assert a hold or lien or other encumbrance or interest in Plaintiff's claims, demands, and causes of action against Releasees, Plaintiff will be responsible for paying any costs and fees associated with and otherwise satisfying that hold or lien or other encumbrance, and will hold Releasees and their attorneys harmless for any costs or fees they incur in association with the hold or lien.

(d) Any settlement payments made by check set forth in this paragraph will be delivered to Plaintiff's Counsel at: Attention to Ashwin R. Trehan, Cantrell Schuette, 3350 Buschwood Park Dr., Suite 195 Tampa, FL 33618.

3. **No Consideration Absent Execution of this Agreement.**

Plaintiff understands and agrees that Plaintiff would not receive the monies and/or benefits specified in Paragraph 2(a) above, except for Plaintiff's timely execution of this Agreement and the fulfillment of the promises contained herein.

4. **Disbursal of Settlement Funds/Dismissal of Action.**

The settlement payments described in Paragraph 2(a) will be sent within twenty-one (21) business days after the latest of the following have occurred:

(1) counsel for Defendant receives a copy of the Agreement signed by Plaintiff;

(2) counsel for Defendant receives an executed W-9 Form from Plaintiff's Counsel;

(3) counsel for Defendant receives an executed W-4 and W-9 Form from Plaintiff;

(4) the Court approves the settlement; and

(5) the lawsuit has been dismissed with prejudice and without costs or fees.

5. **General Release, Claims Not Released and Related Provisions.**

(a) **General Release of All Claims**. Plaintiff and Plaintiff's heirs, executors, administrators, successors, and assigns knowingly and voluntarily release and forever discharge Defendant, Defendant's past, present and future direct or indirect parent organizations, subsidiaries, divisions, affiliated entities, and its partners, officers (including but not limited to Scott Galea), directors, trustees, administrators, fiduciaries, employment benefit plans and/or pension plans or funds, executors, attorneys, employees, insurers, reinsurers and/or agents and their successors and assigns individually and in their official capacities (collectively referred to herein as "Releasees"), jointly and severally, of and from any and all claims, known and unknown, asserted or unasserted, which Plaintiff has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the following, as amended:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;

- The Employee Retirement Income Security Act of 1974 ("ERISA");
- The Internal Revenue Code of 1986;
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Equal Pay Act;
- The Genetic Information Nondiscrimination Act of 2008;
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA");
- Executive Order 11246;
- The Rehabilitation Act;
- The Vietnam Era Veterans' Readjustment Assistance Act ("VEVRAA");
- Families First Coronavirus Response Act;
- The Pregnant Worker's Fairness Act ("PWFA")
- Michigan Elliott-Larsen Civil Rights Act, MCL §37.2101 et seq.;
- Michigan Persons with Disabilities Civil Rights Act, MCL §37.1101 et seq.;
- Michigan Whistleblowers' Protection Act, MCL §15.361 et seq.;
- Michigan Statutory Provision Regarding Retaliation/ Discrimination for Filing a Worker's Compensation Claim, MCL §418.301(11) et seq.;
- Michigan AIDS Testing and Confidentiality Act, MCL §333.5131 et seq.;
- Michigan Sales Representative Commission Act, MCL §600..2961;
- Michigan Equal Pay Law, MCL §408.381 et seq.;
- Michigan Social Security Number Privacy Act, MCL §445.81 et seq.;
- The Michigan Improved Workforce Opportunity Wage Act, MCL 408.931, et seq, and its predecessors, the Michigan Workforce Opportunity Wage Act, and the Michigan Minimum Wage Law;
- Michigan Bullard-Plawecki Employee Right to Know Act, MCL 423.501 et seq.;
- Michigan Occupational Safety and Health Act, MCL 408.1001, et seq.;
- Michigan Legal Day's Work Law, MCL §§408.401 et seq.;
- Michigan Payment of Wages and Fringe Benefits Act, MCL §§408.471 et seq.;
- Michigan Polygraph Protection Act of 1981, MCL §37.201 et seq.;
- Michigan Paid Medical Leave Act, MCL 408.961 et seq.;
- Michigan COVID-19 Employment Rights Act MCL 419.401 et seq., as amended;
- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

This is a general release and is intended to be interpreted to the broadest extent permitted by law. However, this release does not apply to any claims Plaintiff's wife, Corie Thompson, may have against Defendant and/or Scott Galea, which claims are expressly reserved.

(b) **Collective/Class Action Waiver and Jury Waiver.** If any claim is not subject to release, to the extent permitted by law, Plaintiff waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Defendant or any other Releasee identified in this Agreement is a party. Similarly, as to any such claim against any Releasee that is not otherwise released, Plaintiff waives Plaintiff's right to a jury trial subject to applicable law.

6. **Confidentiality.**

Plaintiff confirms that prior to the execution of this Agreement, Plaintiff has not revealed its substance or terms to any third parties. Plaintiff agrees not to disclose any information regarding the substance or terms of this Agreement, except to the Court as necessary to obtain approval of the settlement, Plaintiff's spouse, tax advisor, an attorney with whom Plaintiff chooses to consult regarding Plaintiff's consideration of this Agreement and/or to any federal, state, or local government agency. Neither Plaintiff or his counsel shall publicize the terms of this settlement on any website, publication, social media or in the media. This provision shall not be construed to limit Plaintiff's rights under the National Labor Relations Act including, but not limited to, the right to engage in protected concerted activity, including discussing terms and conditions of employment with coworkers, and attempting to improve terms and conditions of employment through channels outside the immediate employee-employer relationship, such as through the National Labor Relations Board.

7. **Acknowledgements and Affirmations.**

(a) Plaintiff affirms that Plaintiff is not presently is a party to any claim against Defendant, except the Lawsuit, which is being dismissed with prejudice. Nothing in this Agreement or these Affirmations is intended to impair Plaintiff's rights under whistleblower laws or cause Plaintiff to disclose Plaintiff's participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

(b) Plaintiff also affirms that Plaintiff has reported all hours worked as of the date Plaintiff signs this Agreement and has been paid and/or has received all compensation, wages, bonuses, commissions, paid sick leave, predictability pay, and/or benefits which are due and payable as of the date Plaintiff signs this Agreement and Plaintiff has been reimbursed for all necessary expenses or losses incurred by Plaintiff within the scope of Plaintiff's employment. Plaintiff further affirms that Plaintiff has submitted expense reports for all necessary expenses or losses incurred by Plaintiff within the scope of Plaintiff's employment. Plaintiff affirms that Plaintiff has been granted any leave to which Plaintiff was entitled under the Family and Medical Leave Act and state and local leave and disability accommodation laws.

(c) Plaintiff specifically covenants not to file any claim or suit against Releasees, and this covenant is a material term of this Agreement. Plaintiff's only claim against Releasees, after the date of this Agreement, shall be for breach of this Agreement and any such claim shall be limited to the monetary consideration paid under this Agreement.

      (d)    Plaintiff further affirms that Plaintiff has not reported internally to Defendant any allegations of wrongdoing by Defendant or its officers, including any allegations of corporate fraud, and Plaintiff has not been retaliated against for reporting or objecting to any such allegations internally to Defendant.

      (e)    Plaintiff represents, warrants, and acknowledges that there are bona fide legal arguments and disputes between the Plaintiff and Defendant, and that the consideration described in Paragraph 2(a) reflects a full compromise for any such claims, including claims under the Fair Labor Standards Act (or applicable state or local wage law) as of the date of execution of the Agreement. If any claim is not barred by this Agreement, all monies paid hereunder shall be set-off against any relief or recovery. Consistent with this Agreement, in the event any class or collective claim is brought against Releasees, which includes or may include Plaintiff and/or Plaintiff's heirs, executors, administrators, and successors, immediately upon learning of Releasee's inclusion, Employee and/or Employee's heirs, executors, administrators, and successors, as applicable, shall withdraw therefrom without obtaining or accepting any relief or recovery.

      (f)    Plaintiff affirms that all of Defendant's decisions regarding Plaintiff's pay and benefits through the date of Plaintiff's execution of this Agreement were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law, except as alleged in the Lawsuit and which claims are expressly released in Paragraph 5(a) above.

      (g)    Plaintiff and Defendant acknowledge Plaintiff's rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights.

**8.**    **Non-disparagement.**

Plaintiff agrees not to make illegal or maliciously false claims, remarks, allegations, statements, comments, innuendo of any kind or nature whatsoever regarding the Company. Plaintiff also agree not to speak about the Company's products or services in a negative, derogatory, or unflattering manner. Plaintiff further agree that under no circumstances may Plaintiff disclose to any member of the public, including, but not limited to, through any media, social media, Facebook, Twitter or similar mechanism, any Confidential Information relating to the Company and/or their products or services. Plaintiff agrees not to publish any fiction, non-fiction, or biographical works or articles of which are in part or in whole related to the Company. Nothing contained in this paragraph shall be interpreted to prevent you from making truthful statements in response to a specific court order, subpoena or legal process that would subject you or the Company to penalty for perjury, even if such statements are otherwise in conflict with this paragraph. This provision does not prohibit Plaintiff from making truthful statements about the terms or conditions of Employee's employment, or from exercising Employee's rights under the National Labor Relations Act, government whistleblower programs, or whistleblowing statutes or regulations.

**9.**    **Medicare Secondary Payer Rules.**

Plaintiff affirms that as of the date Plaintiff signs this Agreement, Plaintiff is not Medicare eligible (i.e., is not 65 years of age or older; is not suffering from end stage renal failure; has not received Social Security Disability Insurance benefits for 24 months or longer, etc.). Nonetheless, if the Centers for Medicare & Medicaid Services (CMS) (this term includes any related agency

representing Medicare's interests, as well as any insurance carrier providing benefits under Medicare Part C or Part D) determines that Medicare has an interest in the payment to Plaintiff under this settlement, Plaintiff agrees to (i) indemnify, defend and hold Releasees harmless from any action by CMS relating to medical expenses of Plaintiff, (ii) reasonably cooperate with Releasees upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Plaintiff is required to indemnify Releasees under this paragraph, and (iii) waive any and all future actions against Releasees for any private cause of action for damages pursuant to 42 U.S.C. Section 1395y(b)(3)(A).

10. **Governing Law and Interpretation.**

This Agreement shall be governed and conformed in accordance with the laws of Michigan without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either Party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. Should a court declare or find the general release in this Agreement to be unenforceable for any reason, Plaintiff agrees to sign a replacement release in a form provided by Defendant.

11. **Nonadmission of Wrongdoing.**

The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

12. **Amendment.**

This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

13. **Entire Agreement.**

This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except for any arbitration, intellectual property, noncompete, restrictive covenant, non-solicitation, nondisclosure, or confidentiality agreements between Defendant and Plaintiff, which shall remain in full force and effect according to their terms. Plaintiff acknowledges that Plaintiff has not relied on any representations, promises, or agreements of any kind made to Plaintiff in connection with Plaintiff's decision to accept this Agreement, except for those set forth in this Agreement.

14. **Counterparts and Signatures.**

This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument. A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail, or which is made electronically, will have the same effect as the original signature.

15. **Mutual Negotiation.**

This Agreement was the result of negotiations between the Parties and their respective counsel. In the event of vagueness, ambiguity, or uncertainty, this Agreement shall not be construed against the Party preparing it. Instead, it shall be construed as if both Parties prepared it jointly.

16. **Third Party Beneficiaries.**

All Releasees are third party beneficiaries of this Agreement for purposes of the protections offered by this Agreement, and they shall be entitled to enforce the provisions of this Agreement applicable to any such Releasee as against Plaintiff or any party acting on Plaintiff's behalf.

PLAINTIFF IS ADVISED THAT PLAINTIFF HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. PLAINTIFF ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO PLAINTIFF'S SIGNING OF THIS AGREEMENT AND HAS IN FACT OBTAINED LEGAL REPRESENTATION ABOUT THE DECISION TO ENTER INTO THIS AGREEMENT BY PLAINTIFF'S COUNSEL, AND SO DOING, ENTERS INTO THIS AGREEMENT.

PLAINTIFF MAY REVOKE THIS AGREEMENT AS TO AGE DISCRIMINATION CLAIMS ONLY FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY ON WHICH PLAINTIFF SIGNS OR ENTERS INTO THIS AGREEMENT AND THE AGREEMENT IS NOT ENFORCEABLE UNTIL THE REVOCATION PERIOD HAS EXPIRED. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO ALLAN S. RUBIN, 2000 TOWN CENTER, SUITE 1650 SOUTHFILED, MICHIGAN 48075, ALLAN.RUBIN@JACKSONLEWIS.COM AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF THE PORTION OF THE AGREEMENT AND GENERAL RELEASE THAT RELATES TO ANY POTENTIAL AGE DISCRIMINATION CLAIMS."

THE REVOCATION MUST BE POSTMARKED OR IF PERSONALLY DELIVERED RECEIVED BY ALLAN S. RUBIN AT THE ADDRESS ABOVE OR HIS/HER DESIGNEE WITHIN SEVEN (7) CALENDAR DAYS AFTER PLAINTIFF SIGNS OR ENTERS INTO THIS AGREEMENT.

PLAINTIFF FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL WAGE & HOUR CLAIMS PLAINTIFF HAS OR MIGHT HAVE AGAINST RELEASEES.

**Signatures to Follow on Next Page**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**KRISTOFFER THOMPSON**

By: _Kristoffer Bruce Thompson (Apr 2, 2025 06:43 EDT)_

Print Name: Kristoffer Bruce Thompson

Date: Apr 2, 2025

**G's PIZZERIA & DELI OF BAY CITY, LLC**

By: _____
    Its:

Date: _____

4916-0196-5861, v. 2

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

| KRISTOFFER THOMPSON | G's PIZZERIA & DELI OF BAY CITY, LLC |
|---|---|
| By:_____ | By: _____ *(signed)* |
| | Its: |
| Print Name:_____ | Date :_____ |
| Date:_____ | |

4916-0196-5861, v. 2